UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL BERNARD JACKSON,<br><br>  Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. CV 16-1635 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I.  SUMMARY

On March 9, 2016, Earl Bernard Jackson ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; March 14, 2016 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 13, 2012, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits alleging disability beginning on March 1, 2008, due to arthritis in his left leg, and a broken left leg. (Administrative Record ("AR") 190, 197, 223). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on March 13, 2014. (AR 43-59).

On April 11, 2014, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 30-38). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: status post gunshot wound to the left lower extremity and possible borderline intellectual functioning (AR 32); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 32-34); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[1] (AR 34); (4) plaintiff had no past relevant work (AR 37); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically cleaner/housekeeper, cafeteria attendant, assembler of small products, inspector/tester, and addresser (AR 37-38); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 34).

On January 13, 2016, the Appeals Council denied plaintiff's application for review. (AR 1).

---

[1] The ALJ determined that plaintiff: (i) could stand and walk for six of eight hours; (ii) could sit for six of eight hours; (iii) could no more than occasionally climb, balance, stoop, kneel, crouch, or crawl; and (iv) could understand and remember tasks, sustain concentration and persistence, socially interact with the general public, co-workers, and supervisors, and adapt to workplace changes frequently enough to perform unskilled, low stress jobs that require simple instructions. (AR 34).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

    experience, allow the claimant to adjust to other work that
    exists in significant numbers in the national economy? If so,
    the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (explaining five-step sequential evaluation process).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

  **B. Standard of Review**

  Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

  While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal

quotation marks omitted); see also Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ must provide "accurate and logical bridge" between evidence and conclusion that claimant is not disabled so reviewing court "may assess the validity of the agency's ultimate findings") (citation and quotation marks omitted); see generally 42 U.S.C.A. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based").

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457). Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'" Id. at 882 (citation omitted). In addition, federal courts may review only the reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity. Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

///

## IV. DISCUSSION

Plaintiff contends that a reversal or remand is warranted because the ALJ, among other errors, failed properly to evaluate the medical opinion evidence. (Plaintiff's Motion at 5-10). The Court agrees. Since the Court cannot find the ALJ's error harmless, a remand is warranted.

### A. Pertinent Facts

On August 16, 2012, Dr. Avezeh Chehrazi, a consultative state agency psychologist, performed a Complete Psychological Evaluation of plaintiff, which included a mental status examination and objective psychological testing.[2] (AR 287-93). Based on the examination of plaintiff and the results of the objective testing, Dr. Chehrazi diagnosed plaintiff with a Mood Disorder (not otherwise specified) and opined, in part, that plaintiff (1) had "general intellectual functioning [] in the mildly delayed range" with a full scale IQ score of 63; (2) "would be able to understand, remember and carry out short, simplistic instructions with no difficulty"; (3) would have "mild difficulty" (a) making "simplistic work-related decisions without special supervision," (b) "comply[ing] with job rules such as safety and attendance," and (c) "respond[ing] to change in a normal workplace setting"; (4) would have "moderate difficulty [] maintain[ing] persistence and pace in a normal workplace setting"; and (5) would have "moderate difficulty [] interact[ing] appropriately with supervisors, coworkers and peers on a consistent basis" (collectively "Dr. Chehrazi's Opinions"). (AR 319-20).

### B. Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the

---

[2] Dr. Chehrazi administered the following tests: Trail Making Test, Parts A and B; Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV); and Wechsler Memory Scale, Fourth Edition (WMS-IV). (AR 318-19).

opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians" (*e.g.*, "State agency medical or psychological consultant[s]"). 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of an examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where an examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject the examining physician's opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted). An ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting an examining physician's opinion. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted).

1  "[The ALJ] must set forth his own interpretations and explain why they, rather
2  than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

3    **C.    Analysis**

4  Plaintiff contends that a reversal or remand is warranted because the ALJ,
5  among several other errors, failed properly to consider Dr. Chehrazi's Opinions.
6  (Plaintiff's Motion at 5-9). The Court agrees. Since the Court cannot find the
7  ALJ's error harmless, a remand is warranted.

8  Although not entirely clear from the administrative decision, the ALJ
9  appears to give less weight to Dr. Chehrazi's Opinions for a variety of reasons –
10 none of which are specific and legitimate, much less clear and convincing. For
11 example, although Dr. Chehrazi specifically opined that "[t]he test results appear
12 to be a generally valid estimation of the [plaintiff's] functional level at this time"
13 (AR 319), the ALJ determined that plaintiff's IQ score of 63 found by Dr.
14 Chehrazi was "not valid" for essentially four reasons, none of which were
15 adequate for rejecting the results of *objective* psychological testing conducted by
16 Dr. Chehrazi.

17 First, the ALJ stated that "[d]uring the course of the psychiatric
18 examination, [plaintiff] <u>refused</u> to cooperate with the intake questionnaire due to
19 reported difficulties reading and writing. . . ." (AR 36) (citing Exhibit 6F at 1 [AR
20 315]) (emphasis added). Nonetheless, Dr. Chehrazi actually stated that plaintiff
21 "was *unable* to complete the intake questionnaire due to [] difficulties with
22 reading and writing[,]" and that the intake questionnaire had, in fact, been
23 completed with plaintiff during the psychological (not "psychiatric") evaluation.
24 (AR 315). The ALJ also concluded that plaintiff's "alleged inability to read and
25 write during his mental examination was feigned" purportedly because "[plaintiff]
26 was able to read and filled out numerous, multi-page, detailed forms as a part of
27 the disability process, all without assistance." (AR 36) (citing Exhibits 3E - 5E
28 [AR 229-51]) (emphasis added). The ALJ's inference that plaintiff's "difficulties

with reading and writing" were feigned is not supported by substantial evidence. For example, most of the narrative responses to questions in plaintiff's Social Security forms were mostly cryptic and incomplete, replete with misspellings and malapropisms, and very often patently unintelligible. (AR 229-51). Several of plaintiff's check-box answers reflected a fundamental misunderstanding of the questions posed. For instance, although instructed to "[s]kip to next page" because plaintiff had checked "no" after the question "Did you supervise other people in this job?", plaintiff incorrectly provided responses to follow up questions "Did you hire and fire employees?" and "Were you a lead worker?" (AR 230). To the extent plaintiff was providing responses on his own behalf, one of the forms plaintiff used was entirely incorrect (*i.e.*, "Function Report – Adult – *Third Party*"). (AR 244-51). Moreover, the ALJ's conclusion that plaintiff filled out the complex forms "all without assistance" borders on speculative, particularly given that some of the forms had been partially filled out in advance (AR 229), several forms appear to have been completed in different styles of handwriting, and one form did not provide the "[n]ame of person completing [the] form" at all (AR 240).

     Second, the ALJ stated "[plaintiff] reportedly drives an automobile without assistance and is able to give a cogent explanation of his medical history, neither of which would be consistent with a 63 IQ." (AR 33) (citing Exhibit 5F [AR 310-14]). The exhibit cited by the ALJ, however, is the report of the "Internal Medicine Consultation" conducted by an entirely different medical source, who opined regarding plaintiff's physical (not mental) limitations. (AR 310-14).

     Third, the ALJ stated that plaintiff "behaved as if he were intellectually disabled, even though he did not allege mental retardation at any other point in the record, except during the hearing." (AR 33, 36). The ALJ, however, provided no citation to the record for this assertion, nor did he identify the specific point in time to which he was referring (*e.g.*, during the psychological examination, or at

some other time). (AR 36). To the extent the ALJ was attempting to suggest that plaintiff was malingering during the psychological examination, Dr. Chehrazi expressly found otherwise. (See, e.g., AR 316, 317 ["[Plaintiff] cooperated with psychometric testing and appeared to be putting forth adequate effort."]); see Reddick, 157 F.3d at 722-23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record").

Fourth, the ALJ stated "[plaintiff] completed a high school equivalency without special education classes, which suggests he is not severely intellectually disabled." (AR 33, 36). The ALJ cited nothing in the record which supports his assertion that plaintiff obtained a "high school equivalency diploma." (AR 36). Moreover, at the hearing plaintiff testified that he had *not* graduated from high school and had not received "any kind of special job training at any time" thereafter. (AR 46-47). Plaintiff said the same to Dr. Chehrazi during the psychological examination and also reported that he had "receiv[ed] below average grades," he had been "in special education" from sixth to ninth grade, and he had been "suspended over 15 times for fighting and talking back to the teacher." (AR 317). The ALJ's incorrect characterization of the evidence in this respect, and as discussed above, calls into question the validity of both the ALJ's evaluation of the medical opinion evidence and the ALJ's decision as a whole. See Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ determination); Lesko v. Shalala, 1995 WL 263995, *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Furthermore, the ALJ's ultimate findings regarding plaintiff's mental abilities lack sufficient clarity to allow for meaningful review. For example, the ALJ noted the "very limited treatment history" with regard to plaintiff's

"complaints about [] mental health" and, as discussed above, concluded that the results of IQ testing administered in connection with the psychological evaluation were not valid, but the ALJ never clearly explained the weight, if any, he otherwise gave to Dr. Chehrazi's Opinions. (AR 33, 35-36). Instead, the ALJ simply concluded the following:

> I accept the remote possibility that the [plaintiff] may have borderline intellectual functioning. As such, I find that the [plaintiff] can understand and remember tasks; can sustain concentration and persistence; can socially interact with the general public, co-workers, and supervisors; and can adapt to workplace changes frequently enough to perform unskilled, low stress jobs that require simple instructions.

(AR 36). The basis in the medical record for these somewhat convoluted findings, however, is far from clear. For instance, the ALJ's conclusory determination that plaintiff could "socially interact with the general public, co-workers, and supervisors . . . *enough* to perform unskilled, low stress jobs that require simple instructions" (AR 36) (emphasis added) is not sufficiently specific to account for Dr. Chehrazi's opinion that plaintiff had moderate difficulty with "interact[ing] appropriately with supervisors, coworkers and peers[.]" The ALJ's finding also conflicts with evidence provided by Dr. P.M. Balson, a state agency reviewing physician who opined, in pertinent part, that plaintiff only "[could] work in a *non-public* work environment [with] minimal superficial contact of supervisors and coworkers."[3] (AR 74, 90) (emphasis added).

///
///

---

[3] The ALJ does not appear to make any specific reference to, much less discuss in any detail, any of Dr. Balson's opinions. See, e.g., Marsh, 792 F.3d at 1172-73 ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them.").

Ultimately it appears that the ALJ's rejection of plaintiff's IQ score, and general findings regarding plaintiff's mental residual functional capacity were erroneously based solely on the ALJ's own, lay interpretation of Dr. Chehrazi's findings and the purported lack of treatment records. To the extent that is true, the ALJ's findings, at least regarding plaintiff's mental residual functional capacity, are unsupported by substantial evidence. See Penny, 2 F.3d at 958 ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."); see also Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the temptation to play doctor and make . . . independent medical findings.") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)) (quotation marks omitted); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (citations omitted).

The Court cannot confidently conclude that the ALJ's error was harmless. For example, the ALJ suggested that plaintiff may have been found disabled based on Listing 12.05 if the ALJ found plaintiff's full scale IQ of 63 valid. (AR 32-33).

Accordingly, a reversal is appropriate to permit the ALJ to consider all of the medical evidence regarding plaintiff's mental limitations.

///
///
///
///
///
///

12

## V. CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 29, 2016

                                /s/
                               Honorable Jacqueline Chooljian
                               UNITED STATES MAGISTRATE JUDGE

---

[4] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the Commissioner may wish to reassess and more clearly discuss all of the medical evidence pertaining to plaintiff's mental residual functional capacity.

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).